MICHAEL D. ALLEN, Employee, Plaintiff v. SOUTHAG MANUFACTURING, Employer, and THE PHOENIX FUND, Carrier, NATIONAL BENEFITS OF AMERICA, INC., Administrator, Defendants

No. COA03-1598

(Filed 7 December 2004)

### 1. Workers' Compensation— total disability—conflicting evidence—Commission's finding supported

There was competent evidence in a workers' compensation case to support the Industrial Commission's finding of ongoing total disability and the award of compensation and medical costs. Although there was some evidence that defendant continued to work after he left defendant's employ, there was substantial medical evidence that plaintiff's condition prevented his working. The Commission's findings are conclusive as long as they are supported by competent medical evidence.

### 2. Workers' Compensation— attorney fees—unreasonable denial and defense of claim

The Industrial Commission did not abuse its discretion by awarding plaintiff attorney fees in a workers' compensation case where defendant must have been aware of plaintiff's disability, but failed to pay even temporary or partial compensation until ordered to do so almost four years later. N.C.G.S. § 97-88.1.

Appeal by defendants from decision entered 16 July 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 20 September 2004.

*Law Offices of George W. Lennon, by George W. Lennon, for plaintiff-appellee Michael D. Allen.*

*Brooks, Stevens & Pope, P.A., by Robert S. Welch and Jennifer S. Shapiro, for defendant-appellants SouthAg Manufacturing, The Phoenix Fund, and National Benefits of America, Inc.*

MARTIN, Chief Judge.

Defendants appeal from an order of the North Carolina Industrial Commission ("Commission") awarding plaintiff (1) total disability compensation beginning on the date of his last employment with defendant-employer and continuing until further order of the

Commission, (2) medical treatment related to plaintiff's injury, and (3) attorneys' fees.

Beginning in February 1998, plaintiff was employed as a painter and general laborer at SouthAg Manufacturing, a manufacturer of heavy metal trailers. On 17 March 1999, a large piece of steel angle iron fell on plaintiff's left foot, fracturing his toes. The incident was reported to plaintiff's supervisor, and plaintiff was sent to MedFirst Urgent Care for treatment. Defendant-employer reimbursed plaintiff for the medical bills.

Plaintiff returned to work a week after the incident. He worked in a light duty capacity in the inventory building and wore orthopedic shoes. He returned to his former duties in the manufacturing building after a week or two, and he continued to wear the orthopedic shoes or tennis shoes since the required steel-toe boots hurt his foot. Plaintiff's pain, however, continued to increase, so he sought treatment at Knightdale Primary Care the following month. He was referred to podiatrist Carroll Kratzer at the Raleigh Orthopaedic Clinic, whom he saw 16 June 1999.

Dr. Kratzer found that plaintiff's fractures were beginning to heal, but that he had a limited range of motion in his left toes and walked with a severe limp on his left foot. Dr. Kratzer found that plaintiff's symptoms were consistent with Reflex Sympathetic Dystrophy (RSD), now called Complex Regional Pain Syndrome (CRPS), which is an injury to the sympathetic nervous system that causes significant pain beyond the level normally experienced with the particular injury. Dr. Kratzer did not find, however, conclusive radiographic evidence of CRPS. He recommended further testing, including neurological and muscle testing, as well as aggressive physical therapy to try to reestablish function in the foot.

On 8 October 1999, plaintiff saw neurologist David Konanc of Raleigh Neurology Associates. After testing, Dr. Konanc determined that plaintiff had CRPS. He recommended rest, pain medication, and elevation and cooling of the foot. He also recommended that plaintiff see Dr. Keith Kittelberger at Carolina Pain Consultants for evaluation and treatment of CRPS. Dr. Kittelberger specializes in anesthesiology and pain management.

Dr. Kittelberger treated plaintiff for the pain in his foot by prescribing several medications and injecting local anesthetics in plaintiff's leg, called lumbar sympathetic blocks. The blocks, how-

ever, did not decrease plaintiff's pain level. Over the next year, plaintiff saw several doctors at Carolina Pain Consultants and received a myriad of treatments, including sympathetic blocks, medication, physical therapy, and psychological counseling for coping with pain. Dr. Kittelberger stated at his deposition that plaintiff's condition was more likely than not permanent and that it would require long-term care.

Dr. Robert Jacobson, also at Carolina Pain Consultants, saw plaintiff on a more regular basis than Dr. Kittelberger and agreed that plaintiff's condition was permanent. He testified to the following: (1) it would be very difficult for plaintiff to return to his pre-injury work given his degree of pain; (2) plaintiff's pain affected his ability to concentrate and to work many hours at a stretch; (3) plaintiff would probably need to take frequent unscheduled breaks in any future employment; and (4) plaintiff could attempt a sedentary job, but it was not likely with his pain level that he could sustain his concentration and keep regular hours.

Plaintiff continued working at SouthAg Manufacturing for a year after the incident. During that year, he was frequently absent from work at the recommendation of his doctors and had to take extra breaks during the day to alleviate his pain. Plaintiff stopped working at SouthAg in March of 2000. Two employees of SouthAg testified that plaintiff said he was leaving for another job. Plaintiff, however, testified he left because of the pain in his foot and never said he had another job. He testified that he has not worked at all since leaving SouthAg.

Dr. Robert John Wilson, III, a physical medicine rehabilitation physician with the Triangle Orthopaedic Associates, saw the plaintiff in the summer of 2001, more than two years after the accident. At that time, Dr. Wilson observed that plaintiff had "extreme amounts of limping when he walked," "a scissoring gait," "significant calf atrophy," "skin changes," "very limited ankle motion," and "pain with pressure on his foot." Dr. Wilson stated that although CRPS typically lasts only six to twelve months, some patients develop chronic CRPS. The plaintiff appeared to have chronic CRPS given the continued pain, and Dr. Wilson believed the CRPS would probably last indefinitely.

After a hearing before a deputy commissioner, the deputy commissioner made the following factual findings: (1) the greater weight of the evidence showed plaintiff voluntarily quit work with defend-

ALLEN v. SOUTHAG MFG.

[167 N.C. App. 331 (2004)]

ant-employer to pursue other employment; (2) there were numerous references to plaintiff's "work" in doctors' reports after the date plaintiff left SouthAg, which indicated plaintiff did work elsewhere even though he testified he did not; and (3) plaintiff had not reached maximum medical improvement since further treatments for his condition were available. The deputy commissioner therefore concluded that plaintiff lacked credibility and had failed to establish permanent disability. She awarded plaintiff only four weeks of temporary total disability because of a doctor's note excusing plaintiff from work for one month. She also ordered defendant to pay 25% of that amount as attorneys' fees and to continue to pay plaintiff's medical costs.

The full Industrial Commission reversed the holding of the deputy commissioner. It found, *inter alia*, that plaintiff suffered a compensable injury by accident arising in and out of the course of his employment on 17 March 1999, and that plaintiff met his burden of proving total disability. The Commission awarded plaintiff ongoing total disability compensation of $273.38 per week beginning on the date of his last employment with defendant-employer in March of 2000 and continuing until further order of the Commission. The Commission also ordered defendant-employer to pay plaintiff's medical treatment related to his compensable injury and awarded plaintiff attorneys' fees pursuant to G.S. § 97-90 and § 97-88.1.

---

[1] The standard of review for this Court is whether the Commission's findings of fact are supported by any competent evidence:

> In reviewing an opinion and award from the Industrial Commission, the appellate courts are bound by the Commission's findings of fact when supported by any competent evidence; but the Commission's legal conclusions are fully reviewable. An appellate court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding."

*Lanning v. Fieldcrest-Cannon, Inc.*, 352 N.C. 98, 106, 530 S.E.2d 54, 60 (2000) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). Defendant-appellants argue that there is no competent evidence to support the Commission's finding of total disability since there was some evidence to indicate plaintiff continued to work after he left SouthAg Manufacturing in March 2000. Where the evidence is conflicting, the Commission's

findings of fact are conclusive on appeal as long as they are supported by competent evidence. *Adams v. AVX Corp.*, 349 N.C. 676, 682, 509 S.E.2d 411, 414 (1998). The record contains substantial medical evidence, discussed above, that plaintiff's condition prevented him from working in either active or sedentary jobs. We therefore find that there is competent evidence to support the Commission's finding of ongoing total disability and the award of compensation and medical costs.

[2] Defendant-appellants also argue that the Commission erred in awarding plaintiff attorneys' fees. The Commission's findings of fact included the following:

> 16. Defendants failed to properly investigate plaintiff's claim, denied his claim without reasonable grounds, and continued to deny and defend his claim after the evidence established compensability. Defendants also failed to comply with known statutes and Rules of the Industrial Commission regarding the reporting, payment, and filing of documents related to the acceptance or denial of benefits for injuries occurring to plaintiff in his workplace. Defendants' actions in this case constitute stubborn, unfounded litigiousness.

The record reflects that defendants objected to plaintiff receiving additional medical examinations and treatment, and they denied that his injury arose in and out of the course of his employment. Plaintiff testified he never received a copy of Form 19, which the law requires employers to provide to injured employees. After the injury, plaintiff had to take frequent breaks at work, had to leave work regularly for doctors' appointments, and had, according to doctors' reports, an extreme limp and abnormal gait. Defendant-employers must have been aware of his disability, yet they failed to pay even temporary or partial compensation until ordered to do so almost four years later. The Commission therefore concluded as a matter of law that defendants unreasonably denied and defended this claim and awarded plaintiff attorneys' fees pursuant to G.S. § 97-88.1, which states that "[i]f the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them." N.C. Gen. Stat. § 97-88.1. We conclude that the Commission did not abuse its discretion in granting plaintiff attorneys' fees and affirm this award.

Affirmed.

Judges TIMMONS-GOODSON and HUDSON concur.